## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PENNY A. ONEAL,                    )
                                   )
                    Plaintiff,     )
          v.                       )          1:16CV253
                                   )
NANCY A. BERRYHILL,                )
Acting Commissioner of Social      )
Security,                          )
                                   )
                                   )
                    Defendant.     )

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Penny A. Oneal brought this action to obtain review of a final decision of the Commissioner of Social Security[1] denying her claims for social security disability benefits and supplemental security income. The Court has before it the certified administrative record and cross-motions for judgment.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for disability benefits and supplemental security income in, respectively, September and November of 2013, alleging a disability onset date of April 9, 2013. (Tr. 184-192.)[2] The applications were denied initially and upon reconsideration. (*Id.* at 80-81, 114-15, 120-25, 128-136.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 137-38.) After a hearing, the ALJ determined that Plaintiff was not

---

[1] Nancy Berryhill recently became the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy Berryhill should be substituted for Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the administrative record filed manually with the Commissioner's Answer. (Docket Entry 7.)

disabled under the Act. (*Id.* at 29-55, 11-23.) The Appeals Council denied a request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-5.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court, therefore, is not whether Plaintiff is disabled but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the well-established sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520 and 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] The ALJ determined at step

---

[3] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to his [or her] past relevant work; and (5) if not,

one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 9, 2013. (Tr. 13.) The ALJ next found the following severe impairments at step two: degenerative disc disease of the back, obesity, depression, and anxiety. (*Id.*)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.* at 14.) The ALJ next set forth Plaintiff's Residual Functional Capacity ("RFC") and determined that she could perform a reduced range of medium work in that she "[c]an stand and/or walk a total of four hours and sit a total of six hours in an eight hour workday. The claimant can frequently climb, balance, stoop, kneel, and crouch. The claimant can never crawl. The claimant can perform simple routine tasks." (*Id.* at 16.) At the fourth step, the ALJ determined that Plaintiff was unable to perform her past relevant work. (*Id.* at 21.) Last, at step five, the ALJ concluded that there were other jobs in the national economy that Plaintiff could perform. (*Id.* at 22.) Consequently, the ALJ determined that Plaintiff was not disabled under the Act.

### IV. ISSUES AND ANALYSIS

Plaintiff contends that the ALJ erred in assessing her RFC because he (1) incorrectly characterized four hours of standing and/or walking as medium work, (2) erred in assessing her moderate limitations in concentration persistence and pace ("CPP"), and (3) erred in assessing her credibility. (Docket Entry 12 at 8-10.) For the following reasons, these objections lack merit.

could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.*

## A. The ALJ's RFC Determination Is Legally Correct and Supported by Substantial Evidence.

Plaintiff first contends that

> ALJ McMillion limited plaintiff to medium work except that she can only stand and/or walk for a total of 4 hours in a workday, sit for a total of 6 hours, frequently perform postural maneuvers, never crawl, and is limited to simple routine tasks. (Tr. 16) This RFC contains a significant error of law in that both light and medium work require an individual to perform approximately 6 hours of standing/walking in a workday. (SSR 83-10) This RFC clearly does not meet the standards of medium or even light work. At best, the RFC in this decision is essentially sedentary. At Step 5, ALJ McMillion only provided examples of jobs at the medium exertional level that plaintiff could perform, including hand packager, curb attendant, and self-service laundry and dry cleaning attendant. (Tr. 22-23) Considering that the RFC assessed in this decision is far below the medium exertional level, the finding that plaintiff can perform jobs that exist in significant numbers in the national economy is reversible error.

(Docket Entry 12 at 8.) As explained in greater detail below, this argument has no merit.

The RFC measures the most a claimant can do despite any physical and mental limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); 20 C.F.R. §§ 404.1545(a), 416.945(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. *See Hines*, 453 F.3d at 562-63; 20 C.F.R. §§ 404.1545(b)-(e), 416.945(b)-(e). The ALJ must then match the claimant's exertional abilities to an appropriate level of work (*i.e.*, sedentary, light, medium, heavy, or very heavy).[4] *See* 20 C.F.R. §§ 404.1567, 416.967. Any

---

[4] "Sedentary," "light," and "medium" work are defined as follows:

> (a) Sedentary work. Sedentary work involves lifting no more than 10

non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. *See* 20 C.F.R. §§ 404.1569a(c), 416.969a(c). Moreover, the Rules anticipate that a claimant may fall somewhere between two exertional levels, because SSR 83-12 provides that if an "individual's exertional limitations are somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work, . . . [vocational specialist] assistance is advisable for these types of cases." SSR 83-12, 1983 WL 31253, at *3.

In this case, the ALJ concluded that Plaintiff could perform medium work with

---

pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

(c) Medium work. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. §§ 404.1567(a)-(c), 416.967(a)-(c). Additionally, the full range of medium and light work require standing and/or walking for approximately 6 hours of an 8–hour workday. Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5-6. Sedentary work, on the other hand, involves periods of standing or walking that "should generally total no more than about 2 hours of an 8-hour workday." *Id.* at 5.

additional limitation in that she could only stand and/or walk a total of four hours a day, could only sit six hours a day, could only perform certain postural requirements frequently, could never crawl, and could only perform simple, routine tasks. (Tr. 16.) Put differently, the ALJ concluded that Plaintiff could perform a reduced range of medium work.

Plaintiff's contention that it was an error of law to find a claimant could perform a reduced range of work within a particular exertional level is without merit. As noted above, the Social Security Rules anticipate such a finding and the Fourth Circuit Court of Appeals has concluded the same. *See e.g.*, *Golini v. Astrue*, 483 F. App'x 806, 808 (4th Cir. 2012) (noting that a claimant's RFC may fall between exertional categories).[5] Because the ALJ concluded that Plaintiff could not perform the full range of medium work, the ALJ should have, and in fact did, consult the services of a vocational expert ("VE"). The ALJ presented the same limitations ultimately set forth in the RFC determination in a hypothetical to the VE and the VE, in turn, concluded that there were jobs in the national economy which a claimant with these limitations could perform. (Tr. 51-52, 16, 22-23.) Consequently, because the conclusion

_____

[5] *See also Moore v. Chater*, 68 F.3d 471, 1995 WL 581945, at *1 (5th Cir. 1995) ("Moore argues that the ALJ's conclusion [that he could perform medium work] is in conflict with the finding that Moore could not stand or walk more than four hours per day . . . The flaw in Appellant's argument is that the ALJ did not find that Moore could perform a full range of medium work. He found that Moore could perform medium work subject to the limitation that he could stand or walk no more than four hours per day"); *Smith v. Colvin*, No. 3:12-cv-325/CJK, 2013 WL 2242994, at *7 (N.D. Fla. May 21, 2013) (unpublished) (substantial evidence supported the ALJ's decision where he limited claimant to a reduced range of medium work with standing or walking for only four hours); *Hensley v. Colvin*, No. 5:13-cv-27810, 2015 WL 566626, at *18 (S.D.W.V. Feb. 10, 2015) (unpublished) (collecting cases, and noting that a limitation on standing and walking does not necessarily mandate a finding of sedentary work); *Santiago v. Barnhart*, 367 F. Supp. 2d 728, 733 (E.D. Pa. 2005) ("There is nothing oxymoronic in finding that a plaintiff can perform a limited range of . . . work. Such a finding is appropriate where, as here, the evidence shows that the plaintiff can perform some, though not all, of the exertional requirements of a particular range.").

is legally correct and supported by substantial evidence, the ALJ did not err as a matter of law in concluding Plaintiff could perform a reduced range of medium work.

As a result, Plaintiff's corollary argument fails too. Plaintiff asserts that the ALJ utilized the incorrect Medical-Vocational Guidelines, or Grids, in determining that she was not disabled.[6] (Docket Entry 12 at 9-10.) However, as discussed, the ALJ, through a VE, found that Plaintiff could perform a reduced range of medium work. The limitation to four hours of standing and/or walking did not convert the exertional level to sedentary.

More specifically, in his decision, the ALJ noted that Plaintiff's ability to perform all or substantially all of the requirements of medium work was impeded by the additional limitations discussed above. (Tr. 16.) The ALJ recognized that he could not rely on the Grids to reach a decision (*Id.* at 22-23) and consulted a VE to determine whether jobs existed in significant numbers in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. (Tr. 22-23, 50-54.) *See* 20 C.F.R. §§ 404.1566(e), 416.966(e) (authorizing an ALJ to use a VE in complex cases to determine whether work exists in significant numbers in the national economy); SSR 83-12, 1983 WL 31253, at *2 ("Where the extent of erosion of

---

[6] The Grids are tables prepared by the Commissioner that evaluate a claimant's ability to work by matching the claimant's age, education, and work experience with her work capability. 20 C.F.R. pt. 404, subpt. P, app. 2. The Grids set forth presumptions regarding whether jobs exist in significant numbers in the national economy given the particular limitations possessed by the claimant. *See Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987). The Grids do not cover all possible circumstances, such as when a claimant's exertional RFC does not specifically coincide with any one of the defined exertional ranges of work or when a claimant has solely nonexertional limitations or a combination of exertional and nonexertional limitations. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, a§ 200.00(d), (e). Where a claimant's RFC does not directly correspond with the Grids, the Grids are used as guidance for decision-making, rather than directly applied. 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(d); *see also* SSR 83-12, 1983 WL 31253 (clarifying that the Grids are to be used as a "framework" for adjudicating claims where an individual's RFC falls between ranges of work).

the occupational base is not clear, the adjudicator will need to consult a vocational resource.") Even with the reduced range of medium work contained in the hypothetical question, including the four-hour standing and walking limitation, the VE testified that there were 55,000 hand packager jobs nationally, 50,000 curb attendant jobs nationally, and 35,000 self-service laundry and dry cleaning attendant jobs nationally that Plaintiff could perform. (Tr. 22-23, 52-53.) Therefore, the ALJ's reliance on the VE testimony, in conjunction with the medium Grid rules as a framework for decision-making, was entirely proper.

**B.  The ALJ Adequately Accounted for Plaintiff's Limitations in CPP.**

Next, Plaintiff contends that the ALJ's RFC finding failed to account for her mental limitations in CPP. (Docket Entry 12 at 9.) This objection lacks merit as well.

More specifically, in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), the Fourth Circuit determined that remand was appropriate for three distinct reasons, one of which is relevant to the analysis of this case. Specifically, the Fourth Circuit remanded in *Mascio* because the hypothetical the ALJ posed to the VE, and the corresponding RFC assessment, did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining CPP. *Mascio*, 780 F.3d at 637-38.

The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks

omitted).  In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.*  Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why moderate difficulties in CPP did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.*

Here, as mentioned earlier, the ALJ determined at step three that the claimant had moderate limitations in CPP.  (Tr. 15.)  In support, the ALJ's assessment in its entirety was:

> With regard to concentration, persistence, or pace, the claimant had moderate difficulties.  The claimant reported an increase in her anxiety and depression with symptoms including mood swings, crying spells, panic attacks, increase in fatigue, difficulty in focusing, and difficulty with her memory.  (Exhibit 5E, 6E).  However, the claimant has also reported that her anxiety remains "well controlled" on medication, which suggests that her symptoms do not interfere with her concentration, persistence, and pace when on her medication.  (Exhibit 10F/1).  Further, as discussed above, the claimant performs a myriad of daily activities, which demonstrates concentration, persistence, and pace.  The claimant worked as a cashier for Goodwill Industries after the alleged onset date (Exhibit 12F 5-8) which is [sic] also demonstrates concentration, persistence, and pace.  Objective mental status examination results revealed that the claimant has intact attention, concentration, and memory.  (Exhibits 5F, 6F).  This evidence supports a finding of moderate difficulties in this domain and demonstrates the claimant's ability to perform simple routine tasks.

(*Id.* referencing Tr. 237, 243, 417, 477, 391, 400.)[7]

---

[7] Plaintiff's activities of daily living included:  bathing, dressing, grooming, finances, grocery shopping, meal preparation, household chores, taking medication, using the computer, going out to eat, feeding the dog, watching television, running errands, and walking outside.  (Tr. 14-15, 389, 398.)

"Pursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *See Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D.Md. May 19, 2015) (unpublished).

Here, as set forth above, the ALJ explained, and supported with substantial evidence, his decision to only limit Plaintiff to simple and routine tasks. No additional explanation was necessary. Nevertheless, the ALJ went on to provide a great deal more explanation and support. Specifically, the ALJ explained further that:

> With respect to the claimant's depression and anxiety, the medical evidence of record reflects no evidence of psychiatric treatment or treatment specifically for any mental impairment between January 2013 and September 2014 (Exhibits 2F; 3F; 9F; 10F16-33; 15F), which suggests that the claimant's alleged onset date is unrelated to any mental impairments. Physical examinations during this time period showed no psychiatric problems. (Exhibits 2F, 3F, 9F, 10F/16-33; 15F). On November 16, 2013, the claimant presented at a psychological consultative examination with Cheri Anthony, Ph.D., and was pleasant and cooperative throughout the examination. The claimant displayed normal posture, gait, motor behavior, and activity levels. The claimant did not appear as if she had a visible medical condition. The objective results of a mental status examination were essentially normal as the claimant had intact attention and memory. She had logical speech, was oriented, was able to recall information, and performed calculations correctly. The claimant did not display difficulties with concentration, persistence or pace, nor did she exhibit any significant communicative or cognitive difficulties.
>
> Furthermore, on May 13, 2014, the claimant presented at another psychological consultative examination with Renee Hinson, Ph.D., and reported that she drove 25 miles to the appointment,

despite her allegation of back pain and limited sitting ability, with no difficulty finding the office. The claimant also sat comfortably throughout the examination. The objective results of the claimant's mental status examination were also essentially unremarkable despite her report that her thoughts were preoccupied with bills, which is unrelated to any mental health symptoms. The claimant had normal speech with good communication and normal attention and concentration. She had intact memory, was oriented, and performed serial threes and sevens correctly. The claimant reported an ability to tolerate stress and pressures associated with day to day activity. (Exhibit 6f).

Additionally, during a physical examination on October 29, 2014, the claimant presented for a follow up on her anxiety and reported that her anxiety was well controlled on Klonopin as she only uses the medication on a necessary basis, which also suggests that her anxiety symptoms are periodic. The objective psychiatric results of her examination were normal. (Exhibit 10F/1-3). Despite her allegations as to the severity of her mental health symptoms, the claimant received no treatment for any mental health problems between November 2014 and July 2015. (Exhibits 12F, 15F, 13F, 16F). In all, the claimant's intermittent complaints of symptoms, reports that her symptoms are managed with medication as needed, and her generally scarce treatment for her mental impairment suggests that her impairments are not limiting as alleged and are not disabling. In consideration of this evidence, the undersigned finds that the claimant can perform simple routine tasks.

(Tr. 18-19 referencing Tr. 291-317, 318-381, 410-16, 432-449, 504-509, 395-400, 417-19, 473-481-86, 510-30.) The Court concludes that the above-quoted analysis of the ALJ is well-supported by substantial evidence. Consequently, Plaintiff's contention that remand for additional explanation is required by *Mascio* is without merit.

### C. The ALJ's Credibility Analysis Is Supported by Substantial Evidence.

Plaintiff may also be contesting the ALJ's credibility analysis. (Docket Entry 12 at 8-

9.)  If so, this argument fails for the reasons set forth by Defendant in her brief.  (Docket Entry 14 at 16-20.)  Specifically, *Craig v. Chater* provides a two-part test for evaluating a claimant's statements about symptoms.  "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing 20 C.F.R. §§ 404.1529(b), 416.929(b)).

If such an impairment exists, the second part of the test then requires an ALJ to consider all available evidence, including the claimant's statements about pain, in order to determine whether the claimant is disabled.  *Id.* at 595-96.  While the ALJ must consider a claimant's statements and other subjective evidence at step two, he need not credit them insofar as they conflict with the objective medical evidence or to the extent that the underlying impairment could not reasonably be expected to cause the symptoms alleged.  *Id.*  Where the ALJ has considered the relevant factors, 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), and heard the claimant's testimony and observed her demeanor, the ALJ's credibility determination is entitled to deference.  *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

Here, the ALJ completed the two-step *Craig* analysis.  First, the ALJ stated that he had carefully considered the evidence and found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (Tr. 17.)  The ALJ therefore discharged his duty under the first step of the *Craig* analysis.  Second, at step-two of the *Craig* analysis, the ALJ decided that Plaintiff's "statements concerning the intensity,

persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (*Id.*)

The ALJ then proceeded to discount Plaintiff's subjective complaints of pain and limitations for legally sufficient reasons. (Tr. 17-21.) First, despite her allegations of severe pain, Plaintiff underwent no medical treatment for back pain between March of 2013 and April of 2014, more than a one-year period. (*Id.* at 17.) There was also no medical treatment for back pain between May and October of 2014, although Plaintiff sought treatment for other issues unrelated to back pain during that period. (*Id.*; *see also* Tr. 410-14, 432, 438, 444, 449, 477-79.) And, as noted by the ALJ, Plaintiff's treatment for back pain was scarce and conservative in nature, despite her complaints of severe symptoms. (*Id.* at 19, 477-79.) *See Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir.1994) (holding an ALJ may discount a claimant's credibility when the alleged level of pain is not commensurate with the treatment sought or received); *Hunter v. Sullivan*, 993 F.2d 31, 36 (4th Cir. 1992) (holding that failure to sustain consistent treatment can constitute specific evidence to support an adverse credibility finding).

Second, the ALJ reviewed Plaintiff's inconsistent statements regarding her back pain. Although Plaintiff testified that her pain was not relieved with medication, she otherwise reported to her physician that it was relieved with Etodolac. (Tr. 19, 417.)

Third, the ALJ considered the limited objective findings. (*Id.* at 17-18). For example, while Plaintiff had some decreased muscle strength and range of motion in the cervical and lumbar spine at a consultative examination in November 2013, Plaintiff had normal cranial nerves, sensation, coordination, rapid alternating movements, reflexes, gait, and station. (*Id.*

at 17, 385-86.)  Likewise, at a consultative examination in May of 2014, although Plaintiff recently sprained her ankle, her gait was not unsteady, lurching, or unpredictable; she used no handheld devices; had normal stance; appeared comfortable in siting and supine positions; appeared stable at station; had only "minimal tenderness" of the cervical spine with a positive straight leg test at 40 degrees; could write and pick up coins without difficulty; had normal cranial nerves, muscle strength, and sensation; and was able to stand on one leg at a time, walk on her heels, and walk on her toes.  (*Id.* at 17, 406-08.)

At a November 17, 2014 visit for back pain, Plaintiff still had a fair range of motion despite some discomfort and a positive straight leg raising test on the right, and had a normal gait and good leg strength.  (*Id.* at 18, 477-78.)  A January 9, 2015 lumbar MRI showed "grossly stable" degenerative disc disease without significant spinal canal or neural foramen stenosis. (*Id.* at 18, 483.)  And, despite her complaints of pain on examination on January 8, 2015, Plaintiff otherwise denied weakness or gait problems and had normal gait and normal strength. (*Id.* at 18, 473-74.)  An examination on January 10, 2015 also revealed normal range of motion, negative straight leg raising tests, normal gait, and normal strength.  (*Id.* at 17, 456.)  Objective findings in July of 2015 likewise noted that despite complaints of pain, she reported being able to walk long distances; her examination was generally unremarkable; and she had normal coordination.  (*Id.* at 18, 510-11.)  Thus, the ALJ appropriately discounted Plaintiff's subjective complaints because they were inconsistent with the medical evidence.  *Hays*, 907 F.2d at 1458; *Hines*, 453 F.3d at 565 n.3 (citing *Craig*, 76 F.3d at 595).

Fourth, the ALJ also noted that Plaintiff's activities of daily living further undermined

her testimony regarding her complaints of severe pain. (Tr. 19.) For example, Plaintiff was able to work as a cashier for Goodwill after her alleged onset date. (*Id.* at 19, 33.) The ALJ reasonably found that this fact undermined her testimony regarding her significant sitting and walking limitations. (*Id.* at 19.) The ALJ also considered Plaintiff's other activities, noting that she lived by herself and could care for herself and her needs, further undermining her allegations of disabling symptoms. (*Id.* at 19, 46-47, 389, 405.) The ALJ noted that Plaintiff drove, did her own grocery shopping, washed clothes, watched television, and cared for her dogs, which were activities inconsistent with her allegations. (*Id.* at 19, 45, 389, 398,405.) *See Ballard v. Colvin*, 90 F. Supp. 3d 470, 478-79 (M.D.N.C. 2015) (holding that the ALJ appropriately found claimant's subjective complaints not fully credible based on a myriad of daily activities). For all of these reasons, the ALJ's credibility analysis is supported by substantial evidence.

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct and supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment (Docket Entry 11) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be **GRANTED**, and the final decision of the Commissioner be upheld.

Joe L. Webster
United States Magistrate Judge

August 2, 2017
Durham, North Carolina

15